■ In the Matter of Government Employees Insurance Company, Respondent, v Maria E. Tramontozzi Sherlock, Appellant. [32 NYS3d 635]—

In a proceeding pursuant to CPLR article 75, inter alia, to permanently stay arbitration of a claim for supplementary uninsured/underinsured motorist benefits, the appeal is from an order of the Supreme Court, Nassau County (Feinman, J.), entered March 20, 2015, which granted the petition and permanently stayed arbitration.

Ordered that the order is reversed, on the law, without costs or disbursements, the petition is denied, and the proceeding is dismissed.

Peter Sherlock was killed on Pine Hollow Road in Oyster Bay, when the vehicle he was driving collided head on with a car driven by Jose Maldonado. The collision occurred when Maldonado, who was being pursued by the Old Brookville police, failed to negotiate a curve in the road and crossed the center line of Pine Hollow Road into the path of Sherlock's vehicle.

Sherlock was insured under an automobile policy issued by Government Employees Insurance Company (hereinafter GEICO). The GEICO policy contained a supplemental uninsured/underinsured motorist (hereinafter SUM) endorsement with a per person liability limit of $250,000. Maldonado and the owner of the car he was driving (hereinafter together the Maldonado defendants) were covered by an automobile policy issued by New York Central Mutual Insurance Company (hereinafter New York Central) with a per person liability limit of $50,000.

Sherlock's widow, Maria E. Tramontozzi Sherlock, was appointed as administrator of her husband's estate. She commenced a personal injury action against the Maldonado defendants and the Old Brookville Police Department, an individual police officer, and other municipal entities (hereinafter collectively the Old Brookville defendants). After New York Central offered to settle the action insofar as asserted against the Maldonado defendants for the $50,000 limit of the New York Central policy, Tramontozzi Sherlock sought, and received, GEICO's consent to the settlement. After mediation, the Old Brookville defendants offered to settle the action insofar as asserted against them for $425,000, under the Upper Brookville Police Department's public risk professional policy. Tramontozzi Sherlock eventually accepted that offer. She also sought benefits under the SUM endorsement of the GEICO policy.

In a letter dated February 26, 2014, GEICO denied Tramontozzi Sherlock's claim for SUM benefits. Relying on our decision in *Weiss v Tri-State Consumer Ins. Co.* (98 AD3d 1107 [2012]), GEICO asserted that, under conditions 6 and 11 (e) of the SUM endorsement, the SUM coverage was reduced and entirely offset by the $50,000 payment Tramontozzi Sherlock received from New York Central and the $425,000 she received from the Old Brookville defendants' public risk professional policy insurer. After she received GEICO's denial of her claim, Tramontozzi Sherlock filed a request for arbitration. GEICO then commenced this proceeding to permanently stay arbitration. Under constraint of *Weiss*, the Supreme Court granted GEICO's petition and permanently stayed arbitration. Tramontozzi Sherlock appeals.

On appeal, Tramontozzi Sherlock does not dispute that, under condition six of the SUM endorsement, her "Maximum SUM Payment[ ]" is the difference between the $250,000 SUM endorsement limit of her GEICO policy and the $50,000 maximum liability limit of the Maldonado defendants' New York Central policy. That difference, $200,000, is the amount by which the Maldonado defendants were underinsured relative to the GEICO policy and its SUM endorsement. Tramontozzi Sherlock contends, however, that condition 11 (nonduplication) does not require reduction of her SUM coverage by the $425,000 she received in her settlement with the Old Brookville defendants' insurer. Rather, she asserts, she is entitled to proceed to arbitration to establish the total amount of bodily injury damages suffered as a result of the collision. She argues that condition 11 would allow a reduction of the $200,000 SUM coverage only to the extent that her receipt of SUM benefits would constitute a duplicate recovery for the same injury. Accordingly, she seeks to establish at arbitration that there would be no duplicate recovery at all: the bodily injury damages from the collision are far in excess of the $50,000 she received from the Maldonado defendants' insurer, the $425,000 she received from the Old Brookville defendants' insurer, and the $200,000 she seeks under the SUM endorsement. In essence, Tramontozzi Sherlock contends that the purpose of condition 11 (e) is to prevent insureds from receiving more in compensation than they have suffered in injury; it is not intended to prevent an insured from obtaining benefits that would bring them closer to full compensation for the injuries that they prove they have suffered. Tramontozzi Sherwood contends that *Weiss* was wrongly decided to the extent that it holds otherwise.

In *Weiss*, we observed that "SUM coverage in New York is a converse application of the golden rule; its purpose is 'to provide the insured with the same level of protection he or she would provide to others were the insured a tortfeasor in a bodily injury accident' " (*Weiss v Tri-State Consumer Ins. Co.*, 98 AD3d at 1110, quoting *Matter of Prudential Prop. & Cas. Co. v Szeli*, 83 NY2d 681, 687 [1994]), and that "SUM coverage does not function as a stand-alone policy to fully compensate the insureds for their injuries" (*Weiss v Tri-State Consumer Ins. Co.*, 98 AD3d at 1110). Condition six of the standard endorsement furthers this policy by setting the maximum SUM benefit as the difference between the SUM endorsement limit and the tortfeasor's automobile liability policy limit (*see* 11 NYCRR 60-2.3 [f]).

By contrast, condition 11 is aimed at preventing double recoveries for the same injuries:

"11. Non-Duplication. This SUM coverage shall not duplicate any of the following:

"(a) benefits payable under workers' compensation or other similar laws;

"(b) non-occupational disability benefits under article nine of the Workers' Compensation Law or other similar law;

"(c) any amounts recovered or recoverable pursuant to article fifty-one of the New York Insurance Law or any similar motor vehicle insurance payable without regard to fault;

"(d) any valid or collectible motor vehicle Medical payments insurance; or

"(e) any amounts recovered as bodily injury damages from sources other than motor vehicle bodily injury liability insurance policies or bonds" (*id.*).

The key to a proper understanding of condition 11 is the recognition that "shall not duplicate" is not aimed at preventing an insured from seeking full compensation by combining partial recoveries from several tortfeasors, but at preventing double recoveries for their bodily injuries.

Tramontozzi Sherlock alleged in her request for arbitration that the bodily injury damages are in the millions of dollars. Presumably, if the Maldonado defendants' policy had contained the same $250,000 liability limit that the GEICO policy provided, Tramontozzi Sherlock would have been able to obtain $250,000 from the Maldonado defendants' insurer as well as the $425,000 from the Old Brookville defendants' insurer. Tramontozzi Sherlock seeks only, through her claim under the SUM endorsement—for which she paid a premium—to be in the same position she would have been in had the Maldonado defendants not been underinsured relative to the GEICO policy. To the extent that *Weiss* can be interpreted to require that the amount of SUM coverage be reduced without regard to the actual amount of bodily injury damages suffered, it should no longer be followed.

Inasmuch as the full amount of the insured's bodily injury damages from the collision on May 30, 2010, has not as yet been determined, Tramontozzi Sherlock is entitled to proceed to arbitration. Balkin, J.P., Roman, Cohen and Hinds-Radix, JJ., concur.